*Illingworth & Clark* vs. *Miltenberger.*

ILLINGWORTH & CLARK vs. MILTENBERGER.

1. Under the act entitled "An act for the better security of mechanics, &c., in the city and county of St. Louis," Sess. Acts 1842-3, where the lien is filed and a judgment obtained before a justice, the clerk can issue an execution without a return of *nulla bona* on an execution issued by the justice.

2. Where a purchaser at a sheriff's sale refuses to pay for property struck off to him, the sheriff can sell again without notice.

3. If, by the terms of a lease, rent is to be paid on a certain day, and if not paid within ten days thereafter, the lease to be forfeited, a tender before the day will not prevent a forfeiture.

## ERROR to St. Louis Circuit Court.

### *Statement of the Case.*

The appellants sued the appellee in ejectment for a certain lot in the city of St. Louis.   In support of their title, they produced the following evidence, to-wit:

1. The record of a mechanic's lien—demand against Abram Allen in favor of Meara & Yates, dated May 14, 1845, for $48, accompanied with a description of the lot sued for.

2. A transcript of a justice's judgment in favor of Meara & Yates against said Allen, for $48 by confession, rendered August 13, 1845.   Said transcript does not state for or on what account the judgment was confessed.

3. Again, the record of said lien demand setting it out for plastering, and cow hair used on said lot, showing the balance due $48, and the time of filing said demand for record, to secure the lien, August 13, 1845—and setting forth that at the time of the plastering, said Allen had the lot, but since had sold it to said Miltenberger, who occupied it at the time of filing the lien. Also, a copy of a notice to said Miltenberger, that his brick house on said lot was intended to be held for said demand, under the act of February 24th, 1843, for the better securing the mechanics of St. Louis. This notice has no date nor signature.

4. Copy of a special fi. fa., issued by the Clerk of the St. Louis Circuit Court, dated August 18, 1845, in which he recites in substance, that whereas said Meara and Yates recovered said judgment (setting it out,) as appears by the transcript thereof, filed according to the statute in such case made and provided." And, whereas said Meara and Yates, August 13, 1845, "according to the statute in such case made and provided," filed in his office as a lien upon the property, an account for work and materials, "in and about a brick house," (describing it by its boundaries, being the same as those of said lot,) "and the said demand upon which a recovery was had as aforesaid, before said justice, being the same demand to secure which a lien was filed as foresaid." "These are therefore to command you that you sell said property, &c."

5. Sheriff's notice that he will sell said brick house, September 16, 1845, under said writ.

6. Return of Sheriff of said sale on said writ, that on 16th September, 1845, he sold it to said Illingworth and Clark for $200.

7. Sheriff's deed to said Illingworth and Clark of all the right, title, &c., of said Allen in said brick house by virtue of said sale, dated October, 1845.

8. Record of lien of the account of said Illingworth and Clark against said Allen for $460, for work and materials for said brick house and kitchen, dated June 4, 1845.

9. Record of judgment in the Circuit Court for said Illingworth and Clark against said Allen and Miltenberger on *scire facias* upon said lien last aforesaid for $460 debt, and $9 30 damages, and for execution against said brick house.

10. Sheriff's deed to said Illingworth and Clark, dated March 10, 1846, in which he recites an execution upon said judgment, advertisement of sale of said brick house and kitchen for January 22, 1846, and sale then of all Allen and Miltenberger's right, title, &c., in said house and kitchen, to one James Clark for $605, but because said Clark failed and refused to pay them, (*without any notice whatever except to Clark,*) he again sold on February 23, 1846, to said Illingworth and Clark for $400.

11. Testimony of Thomas Meara, that he, October 3, 1845, served a notice on Miltenberger, that Illingworth and Clark had purchased at Sheriff's sale said property, and requiring him for the future to pay them rent, or deliver up to them—that Allen was in possession in the spring of 1845, and Miltenberger went in about June, 1845, and was in at the commencement of this suit; the use of the house worth from $300 to $380 per annum.

Here the plaintiffs rested their case.

On behalf of defendant the following testimony was given, to-wit:

1. John F. Darby testified that as agent of John M. Bass, he let the lot stated in said declaration, to said Allen, by a lease dated February 15, 1845, showing it; said lease stated that said Bass by said Darby as his agent, let to said Allen said lot (describing it) for 8 1-4 years from its date, at $100 annual rent, payable quarterly, and provided, among other things, that if any rent remained unpaid for ten days after due "then this lease shall become forfeited by such delay, and shall be forever ended without any demand of rent being made by the said party of the first part, his representatives and assigns, and the said party of the first part may enter into and take possession of said premises after said ten days shall have expired as though this lease had not been made." On it was an assignment to Miltenberger by Allen, dated May 31, 1845, which was done with Darby's consent. Also, on it was a receipt by Mr. Darby, dated June 2, 1845, of $90, as in full for one year's rent, "that is to say to the 15th May, 1846." Mr. Darby testified further that his said receipt was incorrect, in this, that it stated the rent as paid to May 15, 1846, whereas it was

only paid to February 15, 1846. Defendant's counsel asked Darby if the rent had been paid since the end of the first year, to which question plaintiff's objected; but the court overruled the objection, to which the plaintiff's excepted. Mr. Darby then stated that the quarter's rent due May 15, 1846, was not paid; that he demanded it of Miltenberger, but he refused to pay, and that accordingly on May 25, 1846, he declared the lease forfeited, and so wrote it on the lease (where it appears dated May 26, 1846,) and then again leased to Miltenberger at a higher rent. The plaintiff's objected to what witness said about the non-payment of the rent and forfeiture of the lease, but was overruled by the court and they excepted.

On cross examination he testified that Illingworth called several times (don't recollect the time) to pay rent but he refused to receive it except on account of Miltenberger, and told him that he did not regard them as tenants, and would not so recognize them, but told him he would receive it on account of Miltenberger, which he refused to do. He called with several persons but he refused to take it, and told him he had declared the lease forfeited.

On behalf of plaintiff's, Charles C. Whittelsey testified that he with Illingworth called on Darby to tender the quarter's rent. The money was counted out and offered, but Darby refused to receive it except on account of Miltenberger, saying that he did not know Illingworth and Clark, and did not acknowledge them as tenants—that Darby said that the money had been tendered him but he had refused it.

On cross examination, stated that he did not recollect exactly the times of these attempted tender. But one was before the quarter's rent, due May 15th, and the other in September, as he thinks. This was all the testimony.

Plaintiff's asked the court to instruct the jury as follows, to-wit:

"That if they (the jury) believe from the evidence that Meara and Yates filed their lien as set out in the record of liens and recovered judgment against Allen, and issued execution upon the same, and that the property in dispute was sold, and purchased by the plaintiffs, then the plaintiffs are entitled to the possession of the premises under their deed. The plaintiffs are not required to shew anything more than the transcript filed, judgment, execution and sheriff's deed. The defendant cannot dispute in this proceeding the judgment in the case of the plaintiffs against Allen and the defendant, the plaintiffs having purchased under the execution in that case have the defendant's interest and are entitled to verdict. The plaintiffs are entitled to verdict for damages from the time the defendant had notice of plaintiffs title, October 3, 1845, until the present time.

The plaintiffs did acquire title under the execution of Meara and Yates.

The plaintiffs did acquire title under their execution against the defendant and Allen.

The plaintiffs also pray the court to exclude from its consideration, as illegal, all the evidence given by Mr. Darby, as to the non-payment of the rent to Bass, and the forfeiture of the lease since the commencement of this suit."

Which instructions were refused, to which refusal plaintiffs by counsel excepted.

Defendant asked the following instructions, viz:

1. "That the plaintiffs obtained no title under the sale under the execution of Meara and Yates to plaintiffs.

2. If the court believe from the evidence that Bass was, at the time the plaintiffs did their work on the premises, and ever since has been and now is owner of the ground, then the judgment in the plaintiffs suit by *scire facias* is void and the sale under the execution thereon also void.

3. If the court believe as in the last instruction, then as against Bass the judgment and sale under the execution therein referred to in the last instruction, is void as to said Bass.

4. Unless the court believe from the evidence that the plaintiffs tendered the ground rent, on the day it became due, any other tender by itself would not avail to prevent a forfeiture."

Whereupon the court declared the law to be as follows, to-wit:

1. "That the sheriff's sale and deed under the execution in the case of Meara and Yates vs. Abraham Allen, and all the proceedings shown in evidence prior to, and in support of said deed,

and in support of the plaintiffs right to the possession of the premises in question, do not entitle the plaintiffs to recover in this action against the defendant.

2. That unless an execution was issued upon the judgment before the justice of the peace in the case of Meara and Yates vs. Allen, and a return of *nulla bona* thereon, before the said execution in said cause was issued by the clerk of the Circuit Court, the said clerk issued said execution without any authority of law, and the same is void.

3. That the sheriff's sale and deed under the execution in the case of Illingworth and Clark vs. Allen and Miltenberger, and all the proceedings thereon, in evidence prior to and in support of said deed, and in support of the plaintiffs' right to the possession of the premises in question, do not entitle the plaintiffs to recover in this action against the defendants.

4. That the said sale under the execution in the case of Illingworth & Clark vs. Allen & Miltenberger, not having been made on the day mentioned in the sheriff's notice of sale read in evidence, but made on a subsequent and different day, is void.

5. When real estate is taken in execution and offered for sale by a sheriff, and the same is struck down to a bidder, who subsequently refuses to pay the money and comply with his bid, such sheriff cannot and the law does not authorize him to make sale of such real estate on a subsequent day, without first giving twenty days notice of the time and place of such sale, as required in the first instance."

To which ruling of the court plaintiffs by counsel excepted. Upon which ruling, the court found a verdict for the defendant, to which plaintiffs excepted.

The plantiffs filed a motion for a new trial for these reasons, to-wit:

1. The finding of the court is against law.

2. It is against evidence.

3. The court erred in refusing to declare the law asked by the plaintiffs.

4. The court erred in declaring the law.

5. The court erred in admitting illegal evidence and for other reasons.

Which motion the court refused, to which decision of the court the plaintiffs excepted and appealed to this court.

PRIMM & WHITTELSEY, *for Appellants.*

1. Did the sheriff's deed under the execution in favor of Meara and Yates convey title to the land to the plaintiffs, or was the deed void, because no execution was issued by the justice or returned *nulla bona* previous to the issuing of the execution by the clerk of the Circuit Court? The plaintiffs claim that the proceedings were perfectly regular and justified by the law, see Acts 1843, p. 84, 5, 7; which justly authorizes the clerk to issue execution upon the transcript filed, the lien. But if the proceeding was irregular and the execution issued was irregular, yet as it issued upon a good judgment, it is valid as to all parties and cannot be inquired into in a collateral action. That irregularities in issuing of an execution render it voidable and not void, the authorities are abundant, and that the matters cannot be inquired into in a collateral action. If an execution is made wrongly returnable, it is voidable and not void; Shirley vs. Wright, 2 Salk, R., 700; Campbell vs. Cumming, 2 Burr, R. 1187; 2 L. Ray. 775; Voorhees vs. Bank U. S., 10 Peters 479; Blaine vs. Charles Carter, 4 Cranch, 328. If it is wrongly issued, it is voidable only and not void. Jackson vs. Bartlett, 8 J. R., 365; B. N. P. 65; Cowens case, Cro. E., 576; Bushes case, Cro. E., 188; Jackson vs. Robins, 16 J. R., 537, 572; Jackson vs. Delancy, 13 J. R., 535, 550; Reed vs. Austin, 9 Mo. R., 722; McNair vs. Biddle, 8 Mo. R., 264; Burton vs. Egrie, Cro. J., 289.

2. Did the sheriff's deed to plaintiffs under the execution and judgment vs. Allen and the defendant, pass the title? or is the sale and all the proceedings void, because the sheriff did not readvertise after the neglect of James Clark to comply with his purchase? We submit that the

deed passes title, and the proceedings of the sheriff are regular, see statute 1845, c. 61, sec. 42, p 483; which authorizes the sheriff in case the money is not paid to put up the property and sell it again at any time. But we submit that this matter cannot be inquired into collaterally in this suit, the defendant, if there was anything defective in the sale, might have moved to set the same aside; but the sheriff under the execution and judgment, both of which are valid, having made his levy, the sale and the deed will be good; see Blaine vs. Charles Carter, 3 Cranch, 328; Reed vs. Austin, 9 Mo. R., 731. The statute itself is merely directory and asserts nothing more than the common law principles already recognized. The title of the purchaser is good unless he had notice of some fraudulant act. Collaterally the matters cannot be inquired into; see Evans vs. Wilder, 5 Mo. R., 322; Rector vs. Hart, 8 Mo. R., 460.

3. The court erred in allowing testimony to be given as to the forfeiture of the lease, as it was forfeited if at all by the act of the defendant colluding with the lessor. The judgment debtor cannot deny his title against the purchaser at sheriff's sale. He cannot deny title out of himself; see Jackson vs. Jones, 9 Cow., 182; Laughlin vs. Stone, 5 Mo. R., 43.

4. But the tender of rent by plaintiff, though before day, saved the forfeiture. Brent vs. Ferrer, 4 Ark. R., 160.

## TODD & DARBY, *for Appellee, insist:*

That the plaintiffs evidence did not establish a title in them. The deed under the sale on the execution in favor of Meara and Yates did not confer title, *because* there was no evidence of identity between the demand upon which justice's judgment was rendered, and the demand for which the lien was secured; and *because* the said execution was void, for the reason that there had not, prior to its issuing been an execution issued on said justice's judgment and returned with *nulla bona*, *also because* it does not appear that the suit before the justice was begun after filing the lien. The judgment was by confession on voluntary appearance and the judgment and lien are of the same date. The deed under the sale upon the execution in favor of the plaintiffs against Allen and Miltenberger was void, for the reason that the sale was without the notice required by law, in the case of sales of real estate. Sec. 9 of act of Feb. 24, 1843, p. 83, of session acts of 1843.

2. The evidence of the lease and of Mr. Darby, shows that at the time of the commencement of this suit, the title was elsewhere than in plaintiffs. The rent due May 15th and 25th, 1846, not being paid, the lease given in evidence was forfeited by its own terms and no tender or acceptance of rent thereafter could annul it, see note 16, p. 287, of vol. 1, of Saunders Rep.; the distinction there taken between leases for years and for life. By the provisions of the lease the demand otherwise required by law to produce a forfeiture is expressly waived—also a tender before or after the time the money is due cannot avail. It must be on the day it is due. Gilbert on Rents, p. 81; 8 Carr & Payne, p. 578; 34 Eng. Com. Law Rep., p. 530.

3. The court did not err in overruling the objections to Mr. Darby's testimony, *because* the plaintiffs were only claiming the title that had belonged to Allen and Miltenberger. They gave no evidence of any other. The lease showed what this was and the cause that would produce a forfeiture and the fact and act of forfeiture were things *in pais.*

## McBRIDE, J., *delivered the opinion of the Court.*

The first question which we are called upon to decide is as to the validity of the sheriff's sale and deed, under an execution which issued from the clerk's office of the Circuit Court, on a transcript of a judgment

obtained before a justice of the peace, in favor of Meara & Yates against Abraham Allen.

It appears from the evidence that Meara & Yates, on the 13th August, 1845, filed their lien in the clerk's office of the Circuit Court, in which they alledged that Abraham Allen was justly indebted to them in the sum of $43, for labor done and materials furnished in the erection of a house on a lot, (describing the house and lot) and on the same day they commenced an action before a justice of the peace against Allen, who came forward and confessed judgment in their favor, for the above sum. Thereupon they filed a transcript of their judgment, thus obtained in the clerk's office, and on the next day they gave notice to Anthony Miltenberger of their intention to enforce their lien against the property which was then in his possession.  On the 18th August, the clerk issued a special *fieri facias*, containing the usual recitals, and commanding the sheriff to make the debt, &c., out of the premises described.  The sheriff made sale under the writ, and Illingworth and Clark became the purchasers.

The objection is, that prior to the emanation of the execution from the clerk's office, no execution had been issued by the justice of the peace and returned, "nulla bona."  This proceeding was had under an act entitled, "An act for the better security of Mechanics and others erecting buildings or furnishing materials for the same in the City and County of St. Louis;" Session acts 1842-3, p. 83.  The seventh section provides, that when the demand does not exceed $90, suit may be commenced before a justice of the peace, and if judgment be had, a transcript may be filed with the clerk, "who shall thereupon issue an execution, if required, as in ordinary cases, and the sheriff shall immediately proceed to sell the same as other property on executions are sold."  Reliance is placed on the words, "as in ordinary cases," to show that the issuing of an execution by the clerk, is to be governed by the general law, which requires an execution first to be issued by the justice and returned *"nulla bona"* before the clerk is authorized to issue one from his office, on a transcript. This is most obviously a mistake.  The words in their connection, refer to the manner of issuing executions on judgments obtained in the Circuit Court, to enforce liens.  How is the lien to be enforced by an execution from a justice's office?  The law is not treating of other remedies which the plaintiff has to satisfy his claim, but prescribing the manner of proceeding to enforce the remedy given by the act itself.

It is objected that the lien having been filed on the same day that the judgment was confessed, it must be presumed to have been filed after the

judgment, and therefore irregular and void. From the fact, the presumption is equally strong, that the lien was filed before the judgment, and where they are equal, that conclusion should be adopted which will give force and effect to the law.

It appears from a statement in the sheriff's deed made by virtue of a sale under an execution issued on a judgment of the Circuit Court in favor of Illingworth and Clark, and against Allen and Miltenberger, that he advertised the premises in controversy for sale on the 22d January, 1846, and that he sold the same, and James Clark became the purchaser at the sum of $605. That a deed was executed and presented by him to Clark who refused to pay the amount bid, and thereupon the sheriff without giving any other notice proceeded on the 23d of February thereafter, at the usual hour and place for making sales of real estate, under execution, to re-sell the premises, when Illingworth and Clark became the purchasers for the sum of $400.

It is insisted that the second sale made by the sheriff is void inasmuch as it was made without the previous notice of twenty days, as required by the 40th sec. of the act to regulate executions, R. C., 1845, p. 483. The first sale was made under and in conformity to the provisions of this section; but the second sale was made under the 42d sec. of the same act, which authorizes the officer, in event of the first purchaser refusing to comply with the terms of the sale, to again sell the property, at any time, to the highest bidder, and if any loss is occasioned thereby, the officer shall recover the amount of such loss, with costs, by motion before any court, or before any justice of the peace, if the sum shall not exceed his jurisdiction.

This court has decided, at the present term in the case of *Conway* vs. *Nolle,* that a re-sale may be made under this latter section without the officer again giving notice.

The only remaining question which we shall notice is that connected with the forfeiture of the lease by Miltenberger, who held the premises by a transfer from Allen with the assent of Darby, the agent of Bass.

It appears that the premises in dispute were leased by Darby the agent of Bass, to Allen for a term of years, at a quarterly rent of $25, payable on the 15th February, May, August and November. It is stipulated in the deed, "that if either of the payment of rents as aforesaid, shall become due and shall remain in arrear for the space of ten days, then this lease shall become forfeited by such delay and shall be forever ended, without any demand of rent being made by the said party of the first part, his representatives or assigns. And the said party of the first part may

enter into and take possession of said premises after said ten days shall have elapsed as though this lease had not been made."

There is another clause, declaring that any leasing, transferring or other disposition of the premises without the written permission of the lessor, shall forfeit the lease.

On the 31st May, 1845, Allen with the consent of the agent of Bass, assigned the lease to Miltenberger, who went into the possession and paid rent up to the 15th February, 1846 . The rent for the next quarter, ending 15th May, not having been paid by Miltenberger, for the space of ten days after falling due, the agent declared, by an endorsement on the lease on the 25th May, that the said lease was forfeited. Afterwards, the agent relet the premises to Miltenberger, at an advance rent. Before the falling due of the quarter's rent in May, to-wit: in March or April, Illingworth tendered payment to the agent, who refused to receive it, unless made in the name of Miltenberger. The agent refused to recognize Illingworth and Clark as tenants. Illingworth again called in September of the same year, and at other periods and tendered payment of rent, but the agent still refused to accept it, and informed him that he had declared the lease forfeited.

The tender of payment before due, is not a sufficient legal tender, therefore in strictness the agent was not bound to receive the rent from Illingworth in March or April which was not due until the 15th May; 1 Saunders R., 387, note 16. There is no evidence that the tender was made on the 15th May, or at any time within ten days; consequently, under the provisions of the lease, Darby had a right to declare it forfeited. This he did on the 25th May. The other applications on the part of Illingworth, to pay the rent, could avail him nothing, inasmuch as a forfeiture had been declared. If he had desired to succeed to the rights of Allen, under the lease, and prevent a forfeiture, he should have made his tender on the day the rent fell due, or within ten days thereafter. It not having been so paid and a forfeiture declared, the consequence was that Allen and all those claiming under him, were divested of title, and the estate reverted to Bass. The title having again returned to Bass, the agent relet the premises to Miltenberger for an advanced rent. Under this view of the subject, the plaintiffs cannot recover.

The judgment of the Circuit Court ought to be affirmed, and the other judges concurring, the judgment is affirmed.