[S. F. No. 6416. In Bank.—February 5, 1916.]

## EDWARD O. ALLEN, Appellant, v. THOMAS F. CHATFIELD, Respondent.

VENDOR AND PURCHASER—RECOVERY OF INSTALLMENTS BY VENDEE NOT IN DEFAULT—BREACH BY VENDOR.—The vendee, under a contract to purchase real property, can recover from a vendor the amount of all installments paid by the vendee upon the contract if the vendor, without default upon the part of the vendee, conveys the property, which is the subject matter of the contract, absolutely to a third person and thus puts it out of his power to perform the contract.

ID.—AGREEMENT CONDITIONAL ON CONVEYING GOOD TITLE—PENDING LITIGATION—VENDEE ENTITLED TO CONCLUSIVE ADJUDICATION.— Where the contract required that the vendor convey a good and merchantable title, with the usual provision for examination and specifications of objections, and recited the existence of an adverse claim to the property against the vendor, and that it was the subject of litigation in an action then pending in the superior court, and allowed the vendor a specified time until final judgment could be obtained in such suit, the vendor cannot claim performance of the condition as to disposing of this action by notifying the vendee that the time within which the rights which were the subject matter of that action were to be exercised had elapsed, since the vendee is entitled to a conclusive adjudication that the claim had expired,

or to some act of the claimant which would estop him from assert-
ing the claim.

Id.—FACTS NOT CONSTITUTING WAIVER OF PERFORMANCE OF CONDITION.—
The right of the vendee under such contract to insist upon the
performance of the condition relating to a good and merchantable
title was not waived by the refusal of the vendee to pay the pur-
chase money, and his failure to specify any objections to the tender,
upon tender by the vendor of a deed and demand for payment of
the balance of the purchase price.

Id.—PREMATURE TENDER—UNNECESSARY TO SPECIFY OBJECTIONS THERE-
TO.—Where the vendee was under no obligation to pay the pur-
chase price until the title was made good and merchantable, which
had not been done, a tender of a deed at that time was, under section
1490 of the Civil Code, premature and ineffectual, and the vendee
was not required under sections 2074 and 2076 of the Code of Civil
Procedure to specify his objections to such tender, as the time when
a tender could be made had not arrived.

Id.—TENDER OF PERFORMANCE WITHOUT ABILITY TO PERFORM.—Under
section 1495 of the Civil Code, an offer of performance made in
writing or orally, without the ability to perform, does not put the
other party in default, and the party to whom performance is offered
is not required to accept it or to point out the inability to perform.

Id.—CONSTRUCTION OF CODE PROVISIONS—TENDER IN WRITING—ESSEN-
TIALS TO VALID TENDER.—Neither section 2074 of the Code of Civil
Procedure, dispensing with the production and proffer of money,
personal property, or a written instrument, when the same is de-
scribed and tendered in the offer, if the offer is not accepted, nor
section 2076, precluding one who receives a tender in writing, without
objection, from afterward urging an objection with respect to the
particular elements of a tender mentioned in that section, dispenses
with any other essential of a valid tender, or estops the person re-
ceiving such offer from afterward taking advantage of a lack thereof. ·

Id.—OFFER MADE BY PERSON NOT ABLE TO PERFORM.—Sections 2074 and
2076 of the Code of Civil Procedure do not in any wise qualify or re-
peal the provisions of section 1495 of the Civil Code to the effect that
an offer made by a person not then able to perform is of no effect.

Id.—FAILURE TO RAISE OBJECTION WHICH COULD NOT BE OBVIATED.—The
provision of section 1501 of the Civil Code, providing in effect that
the failure to object does not waive a defect which the person making
the offer could not then obviate if objections were then made thereto,
is to be construed as a qualification of section 2076 of the Code of
Civil Procedure.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order refus-
ing a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Lindley & Eickhoff, for Appellant.

Dorn, Dorn & Savage, and Theodore J. Savage, for Respondent.

SHAW, J.—The complaint is in the form of a common law count for money had and received by the defendant for the plaintiff's use, the amount thereof being five thousand dollars. The answer denies the allegations of the complaint. The court found that all the allegations of the complaint are untrue. Judgment was given for the defendant. The plaintiff's motion for a new trial was denied. From the order denying the same the plaintiff appeals, claiming that the findings and judgment are contrary to the evidence. We have reached the conclusion that this claim must be sustained.

The object of the action was to recover five thousand dollars paid by Allen to Chatfield upon the purchase price of certain property sold by Chatfield and one Agnes Bell Rhodes to Allen by a written agreement executed by them. Agnes Bell Rhodes held the legal title for the benefit of Chatfield, and had given him a power of attorney to dispose of the property in her name. She had no other interest, and she is not made a party to this action. The plaintiff's claim is that the defendant, by making an absolute conveyance of the property to a third person without reservation of the plaintiff's rights under the contract, has abandoned the agreement and rendered himself unable to perform the same and that plaintiff is, consequently, entitled to a return of the money paid.

The agreement was made on December 11, 1906. Prior to that time one Henderson had begun an action against Chatfield, Rhodes, and others, to establish his right to purchase the property upon an option contract executed by F. W. Clough, predecessor in interest of Chatfield and Rhodes, on January 10, 1905, to Alexander and Mulgrew, giving an option to purchase the property at any time before December 31, 1909, at a price varying from eighteen thousand dollars to twenty-two thousand dollars, according to the year of its exercise. Henderson claimed to be the owner of this option and Chatfield disputed his right to it, although he admitted that he had taken the property subject to such rights as Henderson may have had. This action was pending at the

time the contract between Allen and Chatfield was executed, and it is this action which is referred to in said contract. If Henderson should prevail in the action, the result would be that he would have had the right to buy the property for about one-half the sum which Allen agreed to pay, and if he exercised his right thereunder Chatfield and Rhodes would be unable to convey the title to Allen.

In this situation Chatfield sold the property to Allen and the parties thereupon executed the following agreement:

"San Francisco, December 11th, 1906.

"Received of Edward O. Allen the sum of one thousand dollars ($1,000.00) gold coin, as payment on account and to secure the sale to him of the following property situate on Clear Lake, Lake County, California: [Here follows description of property.]

"The total purchase price of said property is forty thousand dollars ($40,000.00), of which the sum of four thousand dollars ($4,000.00) must be paid within thirty (30) days from date hereof or this contract shall become void and the payment of $1,000 forfeited. The balance of said purchase price, to wit: thirty-five thousand dollars ($35,000.00) shall be due and payable within one (1) year from date hereof or until title is made good and merchantable (if title is not made good within one year), and if not so paid this contract shall be void and all previous payments hereunder forfeited. I agree upon payment of said $35,000 to convey said property to Edward O. Allen or his assignee by good and sufficient deed of grant, bargain and sale, the payment of said sum and the delivery of said deed being conditions concurrent. I also agree to furnish a complete abstract of title thereto within ten (10) days from date; any objections to said title must be reported in writing within twenty (20) days after receipt of abstract. I am to have twelve (12) months within which to cure any valid objection to said title and thereafter until the final judgment can be obtained in the case pending in the Superior Court of Lake County, entitled 'Blythe H. Henderson vs. Thomas F. Chatfield et al.'; and if within said period the title cannot be made good and merchantable all moneys paid hereunder shall at his option be refunded to said Edward O. Allen or his assignees. Possession shall be retained by me without compensation for twelve (12) months from date hereof. A formal contract

of sale shall be entered into at the time of payment of said $4,000. In view of the pendency of said suit of *Henderson* vs. *Chatfield,* it is agreed that this instrument shall not be recorded.''

Upon this agreement Allen subsequently paid the four thousand dollars mentioned thereunder, making a payment in all of five thousand dollars. The ''formal contract of sale'' referred to was not executed. This, however, does not affect the rights of the parties since, if Chatfield has, without justification, abandoned the contract as it is, Allen's right of recovery is clear.

In the action of *Henderson* v. *Chatfield et al.,* referred to in the contract, judgment was given against Chatfield in September, 1908, declaring the right of Henderson to buy under his option, and also providing that he be let into possession of the land. A new trial was denied, and an appeal was duly taken therein from the judgment and order. On March 7, 1910, the attorneys for the respective parties to that action filed a stipulation that the matters in dispute therein had been settled, and providing that the district court of appeal, to which the appeals had been transferred, should reverse the judgment and remand the case to the superior court with directions to dismiss the action. This reversal was ordered on March 8, 1910, and in pursuance thereof the action was dismissed in the superior court on March 23, 1910.

By the aforesaid agreement with Allen, Chatfield bound himself to obtain a final judgment in the case of *Henderson* v. *Chatfield,* as a condition precedent to his right to demand the acceptance by Allen of a conveyance under the contract. The contract specified that the balance of the purchase money, thirty-five thousand dollars, was not to be payable ''until title is made good and merchantable,'' and it further stated that Chatfield was to have time until final judgment in said case to make the title good and merchantable. Until the title was thus perfected, Allen was not under obligation to pay the remainder of the price, and this completion of the title was a condition precedent to the maturing of his obligation to pay. On March 5, 1910, Chatfield conveyed the property to Theodore A. Bell, who, on March 10, 1910, conveyed the same to Soda Bay Land Company. Both of these

deeds were absolute conveyances in fee and were not taken subject to the Allen contract, or with any reservation or recognition of his rights therein. The evidence shows that they were made upon the theory that Allen had forfeited his right to buy the land by his refusal on February 3, 1910, to perform the agreement, upon a formal written tender to him by Chatfield of a deed for the property, accompanied by a demand for the payment of the price. This conveyance to Bell was a clear abandonment by Chatfield of the provisions of the contract with Allen, and unless such abandonment was justified in some manner by the conduct of Allen, amounting to a default on his part, Allen is entitled to a recovery of the money paid on his agreement. This proposition has often been stated by this court and it may now be considered as settled by the decision in *Brimmer* v. *Salisbury,* 167 Cal. 526, 531, [140 Pac. 30]. The case therefore depends upon the question whether or not Allen was put in default by the aforesaid tender made on February 3, 1910.

So far as material this tender is as follows:

"San Francisco, February 3d, 1910.

"Edward O. Allen, Esq.

"Dear Sir: I beg to advise you that the matter embraced within the suit of *Blythe H. Henderson* vs. *Thomas F. Chatfield et al.,* pending in the Superior Court of Lake County, viz.: the ownership of an option to purchase Soda Bay Resort, has ceased to exist by lapse of time. The said option provides that it must be exercised on or before December 31st, 1909. It was not so exercised, and, consequently, the subject matter of that suit has ceased to exist."

Then follows a statement that deeds are therewith tendered, as provided in the agreement, together with a bill of sale and a release of mortgage. Continuing the tender reads: "I demand of you, concurrently with the delivery of said documents the payment to me of Thirty-five thousand dollars ($35,000.00), balance due on the purchase price of said property."

Allen testified that on presentation of these documents "I shrugged my shoulders and said I didn't have the money to give him at that time." Allen did not pay or offer to pay then or afterward, any further sum upon the contract price.

It will be observed that at the time this tender was made

the final judgment in *Henderson* v. *Chatfield* had not been given. The judgment as it then stood was against Chatfield and would deprive him, so far as appeared on its face, of the right or power to make a good title to Allen. The controversy had not been settled, the stipulation for reversal had not been made, and Chatfield could not then convey the title required by his agreement with Allen. The fact stated in the written tender that the Henderson option had expired by lapse of time on December 31, 1909, and that it had not been exercised, did not remove the defect nor render it immaterial. The title was still in litigation, and the expiration of the option by lapse of time did not render it free from dispute. The question whether or not Henderson had in fact exercised the option before its expiration was unsettled. If Henderson could prove that he had done so or that he had made a lawful offer to do so, he could still enforce the contract against Chatfield and prevent the conveyance of the land to Allen. Under his contract for a merchantable title, Allen was not required to rely on Chatfield's assurance, but was entitled to a conclusive adjudication that Henderson's claim had expired, or to some act of Henderson's which would estop him from asserting the same. (*Sheehy* v. *Miles,* 93 Cal. 288, 296, [28 Pac. 1046]; *Peckham* v. *Stewart,* 97 Cal. 153, [31 Pac. 928]; *Muller* v. *Palmer,* 144 Cal. 313, [77 Pac. 954]; *Gwin* v. *Calegaris,* 139 Cal. 389, [73 Pac. 851].) This defect, therefore, had not been removed, and Chatfield was at that time unable to perform the contract according to its terms.

The defendant claims that this defect was waived by Allen's refusal to pay the purchase money and his failure to specify any objections to the tender. Reliance is here placed upon the provisions of sections 2074 and 2076 of the Code of Civil Procedure which are as follows:

"Sec. 2074. An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument, or property."

"Sec. 2076. The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have

waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

Section 2074 dispenses with the production and proffer of money, personal property, or a written instrument, when the same is described and tendered in the offer, if the offer is not accepted. The provisions of section 2076 preclude one who receives a tender in writing, without objection, from afterward urging an objection with respect to the particular elements of a tender mentioned in that section. Neither of these sections dispenses with any other essential of a valid tender, or estops the person receiving such offer from afterward taking advantage of a lack thereof. (*Doak* v. *Bruson*, 152 Cal. 20, [91 Pac. 1001], and cases there cited.)

The essentials of a valid offer of performance are set forth at some length in the Civil Code in sections 1485 to 1505, inclusive. Sections 1496 and 1501 are similar in effect to the aforesaid sections of the Code of Civil Procedure. Sections 1490 and 1495 specify certain essentials which are not in all cases covered by the provisions of the Code of Civil Procedure aforesaid. In respect of these the tender of Chatfield was not sufficient.

Section 1490 declares that "where an obligation fixes a time for its performance, an offer of performance must be made at that time, within reasonable hours, and not before nor afterward." Aside from this statutory provision, the general rule of law is that a premature offer of performance is ineffectual to put the other party in default, or for any other purpose. (*Rhorer* v. *Bila,* 83 Cal. 54, [23 Pac. 274]; *Powe* v. *Powe,* 42 Ala. 113; *Bowen* v. *Julius,* 141 Ind. 310, [40 N. E. 700]; *Rogers* v. *Morell,* 82 S. C. 402, [129 Am. St. Rep. 899, 64 S. E. 143]; *Portland* v. *Atlantic etc. R. R. Co.,* 74 Me. 250; *Illingworth* v. *Miltenberger,* 11 Mo. 87; *Schultz* v. *O'Rourke,* 18 Mont. 429, [45 Pac. 634]; *Moore* v. *Kime,* 43 Neb. 521, [61 N. W. 736]; *Tillou* v. *Britton,* 9 N. J. L. 127; *Ellis* v. *Graig,* 7 Johns. Ch. (N. Y.) 7.) As we have seen, the balance of the price was not due nor payable by Allen "until the title is made good and merchantable," and the title was not considered good and merchantable until final judgment was obtained in the Henderson case. Until that

event, or something legally equivalent to it, had happened, Allen was under no obligation to pay. It was not within the power of Chatfield to accelerate the time of the payment by a premature tender of something less than a merchantable title. An acceptance by Allen of such premature offer would have accomplished a mutual departure from the contract and not an observance thereof. Sections 2074 and 2076 do not say that a failure to object to a premature offer renders the contract immediately due, or that it waives a subsequent offer made at maturity. Under section 1490, therefore, the offer was made too soon and was ineffectual.

Again, under section 1495 of the Civil Code, an offer to perform, made in writing or orally, is of no effect if the person making it is not at the time able to perform according to the offer. The same principle prevails at common law. (*Doak* v. *Bruson*, 152 Cal. 20, [91 Pac. 1001] ; *Eddy* v. *Davis*, 116 N. Y. 251, [22 N. E. 362] ; *Bigler* v. *Morgan*, 77 N. Y. 318; *Ladd* v. *Mason*, 10 Or. 308; *McCourt* v. *Johns*, 33 Or. 565, [53 Pac. 601] ; *Holladay* v. *Holladay*, 13 Or. 523, [11 Pac. 260, 12 Pac. 821] ; *Hyams* v. *Bamberger*, 10 Utah, 3, [36 Pac. 202].) By these cases it is established that an offer made without ability to perform does not put the other party in default. Here the written offer of Chatfield described deeds which would have conveyed a merchantable title to Allen, if Chatfield and Rhodes had then possessed such title to convey. The deeds were produced and they also are sufficient, in form, to convey the title. Section 2074 makes the unaccepted written offer to deliver the deeds equivalent to the "actual production and tender of the . . . instrument." Under section 2076 Allen is now "precluded from objecting" to any defects in the form, terms, or execution of the deeds which he did not specify at the time. But under section 1495 of the Civil Code the present ability to perform according to the offer is a necessary element in a good offer. The sections of the Code of Civil Procedure do not purport to dispense with that requirement in cases where it is not specified as an objection at the time the offer is made. They do not in any wise qualify or repeal the provisions of section 1495 to the effect that an offer made by a person not then able to perform is of no effect. Chatfield was able to deliver the deeds, but he was not able to convey a merchantable

title, for he did not have such a title. The deeds, no matter how perfect in form and execution, could not convey that which the grantors did not have. Furthermore, the written offer stated that the suit of *Henderson* v. *Chatfield* was still pending and undetermined, and sought to substitute Chatfield's assurance that its subject matter had ceased to exist, in place of the final judgment against Henderson, required by the agreement. The offer showed on its face the inability to perform according to the agreement and Allen .was not required to accept it or point out the confessed inability.

That this is the correct construction of this section is further shown by a consideration of section 1501 of the Civil Code. It provides in effect that the failure to object does not waive a defect which the person making the offer could not then obviate if objections were then made thereto. Section 2076 of the Code of Civil Procedure is not in direct conflict with this provision. The provisions of the different codes, with relation to each other, must be construed as parts of the same statute. (Pol. Code, sec. 4480.) This provision of section 1501 is, therefore, to be construed as a qualification of section 2076. At the time this offer was made the Henderson case was not finally decided, the judgment then existing was in favor of Henderson, and the claims which Henderson may have had, under the option adjudged to belong to him thereby, had not been precluded by an adjudication. Chatfield could not have removed these defects except by some agreement with Henderson. No such agreement was then made, and Chatfield was without power to have it made. Hence this defect in title was not waived. The offer of an unmerchantable title cannot be said to be a due offer of performance of a contract which required a merchantable title. (*Colton* v. *Oakland Bank*, 137 Cal. 376, 383, [70 Pac. 225].)

It follows that Allen was not put in default by this tender, and that Chatfield was not thereby authorized to treat the contract as having been rescinded or abandoned by Allen, or to convey the property absolutely to a third person in practical repudiation of the contract he had made with Allen. He had received the five thousand dollars which Allen here claims and had retained it for nearly five years, in the meantime having also been in the possession of the property. Every principle of justice demands that he should return it

to Allen. We, therefore, conclude that the evidence does not justify the findings or judgment.

The order denying a new trial is reversed.

Sloss, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.